Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Whit Frans*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Whit Frans,<br><br>          Plaintiff,<br><br>     v.<br><br>Reliance Standard Life Insurance Company; Dole Food Company, Inc.; The RSL Group and Blanket Insurance Trust; The RSL Group and Blanket Insurance Trust Disability Plan,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Whit Frans (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Yuma County, Arizona.

3. Upon information and belief, Dole Food Company, Inc. (hereinafter referred to as the "Company") participated in an entity known as The RSL Group and Blanket Insurance Trust (hereinafter referred to as the "Insurance Trust"), which sponsored, administered and purchased a group long term disability insurance policy (hereinafter referred to as the "Policy") which was fully insured by Reliance Standard Life Insurance Company (hereinafter referred to as "Reliance Standard"). The specific group disability policy is known as Master Policy Number LSC 97,200 and the Participating Unit Number for the Company is LTD 121483. The Company's purpose in participating in the Insurance Trust was to provide disability insurance for its employees. Upon information and belief, the Master Policy may have been included in and part of an employee benefit plan, specifically named The RSL Group and Blanket Insurance Trust Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Reliance Standard functioned as the claims administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company, Insurance Trust and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Reliance Standard.

5. Reliance Standard operated under a conflict of interest in evaluating Plaintiff's long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether he was disabled as well as the payor of benefits. Reliance Standard's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of his disability benefits.

6. The Company, Insurance Trust, Reliance Standard and the Plan conduct business within Yuma County and all events giving rise to this Complaint occurred within Yuma County.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits he may be entitled to from the Company and/or any other Company Plan as a result of being found disabled in this action.

9. After working for the Company as a loyal employee for approximately 42 years, Plaintiff became disabled on or about June 6, 2011 due to serious medical conditions and was unable to work in his designated occupation as a Manger, Lettuce Support Services. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to work in any occupation as a result of his serious medical conditions.

10. Following his disability, Plaintiff filed a claim for short term disability benefits which was approved by Reliance Standard, and those benefits have been paid and exhausted. Following the exhaustion of his short term disability benefits, Plaintiff then filed for long term disability benefits under the relevant Policy which was administered by Reliance Standard, meaning it made the decision with regard to whether Plaintiff was disabled.

11. Upon information and belief, the relevant Reliance Standard Policy and definition of disability governing Plaintiff's long term disability claim is as follows:

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
> 1. during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;
> 2. after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

12. In support of his claim for long term disability benefits, Plaintiff submitted to Reliance Standard medical records from his treating physicians supporting his disability as defined by the relevant Reliance Standard Policy.

13. Reliance Standard approved Plaintiff's long term disability claim and paid him long term disability benefits through December 24, 2013, at which time Reliance Standard terminated Plaintiff's disability benefits without any documentation from his physicians that Plaintiff's medical conditions had improved in any way.

14. In a letter dated December 27, 2013, Reliance Standard informed Plaintiff it was terminating his long term disability benefits.

15. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Reliance Standard's December 27, 2013, denial and submitted additional medical, vocational and lay witness evidence demonstrating he met any definition of disability set forth in the relevant Reliance Standard Policy.

16. Plaintiff submitted to Reliance Standard a May 27, 2014 narrative letter from his treating board certified orthopedic surgeon who opined, "[Plaintiff] is not capable of working on a full-time basis."

17. Plaintiff further submitted to Reliance Standard a Functional Capacity Evaluation report dated April 30, 2014, wherein after an extensive several hour evaluation, a qualified physical therapist determined, "…[Plaintiff] is unable to perform the physical demands of any type of work including SEDENTARY work on a regular and consistent basis." (original emphasis).

18. Further supporting his appeal, Plaintiff submitted to Reliance Standard a vocational report from a certified vocational expert dated June 23, 2014, who after reviewing Plaintiff's medical evidence, interviewing Plaintiff and reviewing the definition of disability set forth in the Policy, concluded, "From a vocational standpoint, it is evident that [Plaintiff] is not able to work in his prior occupation or any occupation within the national economy."

19. Plaintiff also applied for, was approved and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

20. In a letter dated June 26, 2014, Plaintiff reminded Reliance Standard that his claim for Social Security disability benefits had been approved and he submitted to Reliance Standard a second copy of the March 30, 2012 Notice of Award from the SSA.

21. On August 11, 2014, Plaintiff submitted to Reliance Standard a complete copy of his Social Security disability claim file that he received from SSA so it could consider SSA's approval as part of his claim.

22. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of May 29, 2011. Plaintiff's claim was approved by the SSA prior to a hearing before an Administrative Law Judge.

23. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Reliance Standard Policy for the first 24 months of disability, and substantially similar to the Policy's definition of disability after the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the reasonableness of Reliance Standard's decision to deny Plaintiff's claim and terminate his benefits.

24. Plaintiff also submitted to Reliance Standard updated medical records from his treating providers that demonstrated his medical conditions had not improved in any meaningful manner that would allow him to return to work in any occupation.

25. In addition to the medical records and reports submitted to Reliance Standard, Plaintiff submitted three sworn affidavits from his wife, long-time friend and prior co-worker, who all confirmed Plaintiff is unable to work in any occupation and that his medical condition had not improved in any way since his date of disability.

26. Despite the objective medical, vocational and lay-witness evidence supporting Plaintiff's claim for long term disability benefits, as part of its review of Plaintiff's claim, Reliance Standard referred him to a medical examination with a physician that it chose, Scott Krasner, M.D. After a superficial examination with Dr. Krasner, who upon information and belief, Plaintiff believes may be regularly retained by

the insurance industry, he opined Plaintiff was able to engage in a gainful occupation and was not disabled. Plaintiff alleges that Dr. Krasner's opinion that he can engage in a gainful occupation is inaccurate, erroneous and against the clear weight of all the evidence. Upon information and belief, Plaintiff alleges a motivating factor why Dr. Krasner opined he was able to return to a gainful occupation is in part due to his relationship with the insurance industry and the regular medical examinations he may perform for the industry. As a result of his relationship with the insurance industry, Plaintiff alleges that Dr. Krasner may have an interest in protecting that relationship and as a result, he may be biased and lack objectivity.

27. Reliance Standard provided Plaintiff with a copy of the September 22, 2014 medical examination report authored by Dr. Krasner on October 13, 2014.

28. In response to Dr. Krasner's report, Plaintiff submitted medical evidence, including an affidavit he authored regarding the examination, as well as responses from his medical professionals to Dr. Krasner's report. Notwithstanding Dr. Krasner's report and opinions, Plaintiff's medical professionals again opined that he remained disabled and unable to work in any occupation due to his serious medical conditions.

29. Plaintiff also submitted to Reliance Standard an Independent Medical Examination report dated November 21, 2014, wherein after an extensive examination and review of his medical records including the report authored by Dr. Krasner, a physician who is board certified in orthopedic surgery concluded, "…[Plaintiff] is totally disabled from working in any occupation on a permanent basis."

30. On January 26, 2015, Reliance Standard notified Plaintiff that it had conducted surveillance on him and provided to Plaintiff a copy of the surveillance footage and accompanying surveillance report.

31. In response letters dated January 31, 2015 and February 3, 2015, the medical professionals who had previously treated and evaluated Plaintiff confirmed they had reviewed the surveillance footage, and reported that their prior opinions regarding Plaintiff's medical conditions and inability to work had not changed.

32. In a letter dated February 17, 2015, Reliance Standard informed Plaintiff it was denying his claim for long term disability benefits. In the letter, Reliance Standard notified Plaintiff he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

33. In evaluating Plaintiff's claim on appeal, Reliance Standard had a fiduciary duty pursuant to ERISA to administer Plaintiff's claim, "solely in his best interests and other participants" which it failed to do. [1]

34. Plaintiff alleges Reliance Standard provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate his claim; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by him and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the impact the combination of

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

those diagnoses and impairments would have on his ability to work; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

35. Plaintiff believes a reason Reliance Standard denied the claim by providing an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Reliance Standard undertook as decision maker and payor of benefits which created an inherent conflict of interest and provided a financial incentive for it to deny the claim.

36. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Reliance Standard and any individual who was involved with and/or reviewed his claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest as well as any ERISA procedural violations which may have impacted or influenced Reliance Standard's decision to deny his claim.

37. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Reliance Standard as referenced herein are so flagrant they justify *de novo* review.

38. As a direct result of Reliance Standard's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan, Insurance Trust, from another relevant Company Plan,

1 and/or the Company as a result of being found disabled.  Plaintiff believes other potential 2 employee benefits may include but not be limited to, health and other insurance related 3 coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the 4 waiver of the premium on a life insurance policy providing coverage for him and his 5 family/dependents.

6     39.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, 7 prejudgment interest, reasonable attorney's fees and costs from Defendants.

8     40.    Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. 9 §20-462, or at such other rate as is appropriate to compensate him for losses he incurred 10 as a result of Defendants' nonpayment of benefits.

11     WHEREFORE, Plaintiff prays for judgment as follows:

12     A.    For an Order requiring Defendants to pay Plaintiff his long term disability 13 benefits and any other employee benefits he may be entitled to as a result of being found 14 disabled pursuant to the Reliance Standard Policy and/or the Plan from the date he was 15 first denied these benefits through the date of judgment and prejudgment interest thereon;

16     B.    For an Order directing Defendants to continue paying Plaintiff the 17 aforementioned benefits until such time as he meets the conditions for termination of 18 benefits;

19     C.    For attorney's fees and costs incurred as a result of prosecuting this suit 20 pursuant to 29 U.S.C. §1132(g); and

21     D.    For such other and further relief as the Court deems just and proper.

22 /
23 /
24 /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DATED this 5th day of June, 2015.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff